Morning, and welcome to the 11th Circuit. We're happy to have you here with us today. We have two cases on for oral argument this morning, and I think you're all familiar with our lighting system, but just a quick review. When the yellow light goes on, you have two minutes left. When the red light goes on, your time is up. We ask that you please stop at that time. Respect the lighting system. The only exception is, if we've asked you a question, then we do want you to answer that question, even if it takes you over time. We wouldn't have asked the question if we didn't want to hear the answer. And with that, I think we're ready to begin. We'll hear first Worldwide Aircraft Services, Inc. v. Cigna Global Insurance Company Limited. And again, we'll hear first from Mr. McClelland. Good morning, Your Honors. Michael McClelland for Appellant Worldwide Aircraft Services, DBA Jet ICU. And indeed, in this case, also on behalf of the more than half a million Americans who receive their emergency care from air ambulances. I know the parties have well briefed the issue in front of the case. The issue in this appeal really is, are the courthouse doors barred to air carriers from seeking reimbursement from non-paying health insurers under the terms of a 47-year-old statute, neither whose text nor expressed intent of Congress require or even suggest such a holding? Well, some would define the issue as whether or not your complaint alleges a claim that relates to a price, route, or service that is otherwise preempted by the federal law. Yes, Your Honor. That's one way to frame it. The district court indeed did find that the complaint for, both for Florida's civil theft statute, section 772.11, and the common law claim for Quantum Meroweth related to a price within the meaning of the ADA's deregulation or, I'm sorry, preemption statute, section 41713. I would respectfully suggest the district court's interpretation or application was in air both in a textual sense and in more of a prefatory sense. The appellate courts, none of the at least four Supreme Court decisions, Morales, Wolins, Ginsburg, and Brock, in none of those cases has the Supreme Court ever addressed the application of the preemption doctrine to an air carriers. But how do you get from the text to a different meaning depending on who's bringing the claim and who's the target of the claim? Okay. The text in the statute, in the preemption section, refers to price, route, or service. A price, I would suggest, under this court's holding in Bailey focuses on the passenger-carrier relationship, not the relationship to a third-party insurer. In this case, in Bailey, it was a third-party insurer as well. This court's decision in Bailey in striking down a provision of Florida's insurance law focused on the fact that that law affected the balance billing provision or the ability to balance bill the passenger-patient. And so this circuit's holding in Bailey focused exclusively on the passenger-to-carrier relationship. Well, right, because that was the facts of that case. If it had said anything directly about the facts here, then that would have been dicta or advisory or, you know, however you want to put it. But I still haven't heard why the answer would be different, just that it is. Well, under Supremacy Clause jurisprudence, the test, the sine qua non for preemption, is whether Congress' manifest intent was to preempt state law. But we still have to find that intent by looking to the text for starters. So let me just, maybe I can focus you this way. What specifically from the text supports the notion that when it is the, when it is the carrier who is seeking the relief, preemption doesn't apply? Again, all of the interpretations by the Supreme Court did concern the assertion of preemption by an air carrier. That's true, but two things about that. First, what part of the text did the Supreme Court rely upon that supports the notion that it's only when it's being sought against an air carrier? And second, what part of the Supreme Court opinions, which were dealing with cases when it was being sought against an air carrier, suggest that their ruling is limited to that, as opposed to just discussing the, you know, applying the law in that case to the facts that appeared there? Thank you, Your Honor, for your question. On a purely textual basis, I would say the definition in the FAA, Title 49, Section 40102, Subdivision 39, the definition of price in the FAA generally is a rare fate or charge. I'm sorry, a rate, fare, or charge. A fare is the amount the passenger, in a commercial airline context, the amount the passenger pays the airline exclusive of fees and taxes. It's also the amount that the airline charges the passenger, right? I mean, it goes both ways. Well, under spared airlines, the D.C. Circuit and the regulation the FAA promulgated in that, which was dealt with in the spared airlines case regarding airline advertising, fare is again, the amount charged to the passenger less or not including taxes and fees. So, the interpretation of the executive agency charged with implementation of the FAA and the ADA is that the fare is the amount paid to the air carrier. Well— That rate— I'm sorry? Well, first of all, what about rate? And second of all, the fact that the fare is the amount paid to the carrier, I don't see why that limits the application of preemption to one party or the other. Well, in terms of a textual analysis, it indicates that Congress's concern and what they in fact deregulated in the Airline Deregulation Act, Congress's primary concern, its manifest intent, which is borne out by the preamble to the ADA, was to deregulate the commercial airline market entirely, getting rid of the prior regimen of federal regulation under the Civil Aeronautics Board and preempting states from filling that void, from re-regulating the airlines, as recognized in the majority opinion in Morales. Well, your—well, one, I had another question, but your response is making me wonder. You've identified Cigna as a third party, but based on your rationale, you've set a price of what it costs the ambulance to get the patient, and it seems like you're then just passing that cost that you set to the patient now to the insurer. So in this instance, is Cigna really a third party? Isn't it just a substitute for the patient who otherwise would be paying this amount that you have set that's covered under the federal law? Well, it's an excellent question, Your Honor, and I don't believe Congress intended to answer that question. I think it's a more difficult searching question as to whether Congress's intent would have reached that. I would say under the causes of action alleged, Cigna, the appellee, is not standing in the shoes of the patient. They are individually, or it is individually liable for its own acts. Okay. The second question before you run out of time is I actually found your suggestion on page 22 of your brief that theft or criminal laws or violations are distinct from what the federal law covers. But then when I went back and I looked at Morales, the Court is talking about gambling and prostitution or even obscenity laws that the State has enacted with respect to advertising. That seems very different from the cause of action you've raised, which does seem to be covered by the relevant federal law. First, with respect to Morales, Morales by its own terms was considering the question before it, which was a state or collection of 50 states and the territories attempt to regulate airline advertising. The Supreme Court of Morales specifically ... Well, I did read Morales. My question is specific to your argument that crimes are separate and apart in terms of coverage under the act. Do you have anything else to support that argument as to why this should be different? Well, the Court in Morales specifically said that while it expressed no opinion as to where to draw the line on preemption in later cases, it assuredly, preemption would not foreclose the application of state criminal statutes. Our argument is that the first cause of action under Florida Statute 772.11, which incorporates by reference Florida's criminal theft statutes, is such a criminal code which would be under the terms of Morales not preempted. And again, it's a further reach in terms of this is not an air carrier seeking preemption, as in Morales. And the majority opinion in Morales, when it enunciated its preemption holding, it carefully said preemption against an air carrier. Morales didn't proceed by its own terms to decide anything beyond preemption asserted by an air carrier to state law causes of action against it. Similarly, in Wolins, the Wolins court called out what it termed a middle course between what Congress intended to preempt and what it did not, and what it left to future cases. And in the words of the Wolins majority, these cases are not, these preemption principles cannot be decided on the basis of one or two cases, but require a more, quote, thorough working out. All right. Thank you very much, Mr. McClelland. And you've reserved five minutes for rebuttal.  We'll hear next from Ms. Gerson. We took Mr. McClelland two minutes over, so we're going to give you an extra two minutes. Please don't feel an obligation to use all that time if you don't need it. Thank you. I just had a drip. Thank you. May it please the Court, Shari Gerson on behalf of the Appellee, Cigna Global Insurance. And I think that Judge Abudu kind of rephrased what the issues are today, which is, are the state law claims brought by the appellant, were they preempted when they were brought in front of the district court judge? And the district court got it correct that those claims are, in fact, preempted by the Airline Deregulation Act of 1978, which we refer to as the ADA. The statute is clear, and we know, we just look at the text of the statute. And it's very broad, and the United States Supreme Court has interpreted it broadly and expansively. Speaking only for myself, I agree with you that the statute is clear and that the Supreme Court also has been clear. To me, the hardest question in the case is whether their quantum Marowit claim was about a contract in fact or a contract in law. Could you talk to us about why you think it was a contract in fact? Yes, yes, of course. And I think that... Or law, I mean, sorry, I mixed up the positions. Yes, I understand. And if you look at Judge Jung's order, there are the two dismissal orders. There's the first dismissal order, you stated a quantum Marowit claim, but we're not sure if it's implied in law, which may be preempted, or implied in fact, which may not be preempted. And when they filed, when JEDIC filed the amended complaint, they threw in allegations that had nothing to do with this claim to show that there was mutual assent between CIGNA and JEDIC. And they also were focused on the state and federal obligations that were preexisting, which would mean that that's an implied in law contract as opposed to implied in fact contract. And the law has been pretty well established that an implied in law contract is in fact preempted under the ADA. Is there anything in the record to explain why CIGNA offered a partial payment? There's nothing in the record on that now. So my question has to do with looking at Florida statute section 772.11. I think there's definitely a strong argument as to why this provision is covered under the Airline Deregulation Act. But on one end, it seems that it's the most problematic provision is the threefold the actual damages. So is it that in putting whether a contract actually existed, if there's a set amount, is it that the set amount, even if it's not subject to a written contract, is also preempted? Or is the set amount okay, which CIGNA paid something, and it's that threefold actual damages that is actually the preempted part? Does that make sense? I think I understand your question, Your Honor. So the issue, I believe, as you put it, is that the Florida statute 772.11, yes, it's asking for treble damages. But in order to determine what the treble damages are, there still needs to be a price determined, but under State law, for what the air ambulance carrier is seeking to be paid. And that's what's prohibited under the ADA, because that law, the State law under which they're seeking for this price to be determined, is asking for a price related to an airline carrier, which they are, and therefore has that prohibited effect, or forbidden effect, I should say. Thank you. So what consequence, if any, is there to the fact that CIGNA paid something? There is no consequence to the fact that CIGNA paid something. It has nothing to do with the two State causes of action that were asserted by GEDICU against CIGNA relate to a price of an air carrier, and therefore are preempted. Well, it relates to the cost of transporting the patient. I mean, that's the amount that's at in dispute, and CIGNA paid something towards that cost. So I guess I'm just wondering what that means for purposes of a price set, and what is the price that would therefore be out of bounds in terms of preemption? Well, I don't think it matters what the price is or isn't. I think the law is that any State law claim brought that relates to the price of an air carrier is preempted under the ADA, whether it's too high, too low, or whatever. If we look at the cases, the Bailey versus Rocky Mountain case out of the 11th Circuit, and it's talking about no balance billing the patient, and that was found to be preempted because it affects the price or the reimbursement to the air ambulance carrier. Or if we look at the Sullivan case out of the 5th Circuit, which talks about the workers' compensation statute, which would cap reimbursement to an air ambulance provider, and that was found to be preempted as well because it affects the price or the amount to be paid to the air ambulance carrier. So whether it's too much or too little, whether it's the air ambulance carrier bringing the claim or the air ambulance carrier is defending the claim, it still relates to the price of the air ambulance service and therefore is preempted under the ADA because it has the forbidden effect of affecting the price of the service. Would you remind me, this isn't directly relevant obviously, but under the No Surprises Act, which side invokes that process or can either side invoke that process? Either side can invoke it. Okay. Is there anything in the record about why that didn't happen here? No. There is not. But I think the district court judge got it right and explained why the NSA is an available remedy for the air ambulance carrier and how the two statutes work in harmony with each other. And that Congress, if you want to talk about congressional intent, when you look at the NSA and Congress actually has a special section under 42 U.S.C. 300 GG 112 and has a section devoted to air ambulance carriers, it shows Congress enacted that in mind and being mindful of the ADA so that there is no confusion or concern whether or not an air ambulance provider has access to the IDR process under the No Surprises Act. And there is, I mean, there is some difference if you were to, if one of the parties were to elect to proceed under the No Surprises Act, because it's sort of baseball-style arbitration, you submit some amount, they submit an amount, and then the panel decides which one. They decide, for example, if they submitted the $400,000 amount, they'd have to decide whether to submit the $400,000 amount or the treble amount for civil theft or what. And there is a strategic consideration involved there, isn't there? A strategic consideration? I apologize, Your Honor, I'm not entirely sure I understand. Well, it's probably my fault. There is a strategic consideration involved in deciding what amount to submit, because once you submit the amount, the panel can only choose from the amounts that are submitted. They can't modify those amounts at all, if I'm understanding it correctly. Is that, maybe I don't understand it correctly, but. So I, are you asking what can be submitted to the NSA? I'm asking, I'm asking what the panel can determine is the award. Can't they, aren't they limited to choosing between one of the things that's actually submitted? I'm not sure. I know I've seen situations where the provider submits an amount, and the other side submits an amount, and I've seen them go picking one. I have seen, I think I've seen some NSA arbitration awards that have been at a different determined amount, but I can't address that specifically. I apologize, Judge. That's all right. Yes. But I do think that the NSA is a great example of congressional intent, and that it was Congress's intent to preempt any and all laws that relate to the service, price, or route of an air ambulance provider. Unless there's any other questions, I think we were going to rest on our brief. All right. Thank you very much. And we'll hear again from Mr. McClellan. May it please the Court, I'd like to answer a couple questions regarding the record that seemed to be up in the air. You can find in the appendix at page 9, the appellee here, Cigna, the claim had a ground ambulance claim and an air ambulance claim. Two different services billed under two different codes. Cigna did indeed, as alleged in the complaint, and you can find that at page 9 of the appendix, Cigna did indeed make a payment on the ground ambulance. However, it paid zero on the air ambulance. The effect of that, or the materiality of it, is when an insurer pays some amount of the claim, they're essentially conceding it's a covered claim. There's no dispute as to whether it was covered by the plan, medically necessary, etc. That's the significance of the payment on the ground ambulance in contrast to the non-payment, or the complete non-payment on the air ambulance. So, that payment doesn't, I guess it doesn't have any negative import in terms of Cigna's position on the claim that's currently before us? I would agree with Your Honor on that. I don't think it moves the needle on the inquiry one way or the other. I think it would matter to the causes of action alleged, were they entitled to a full vetting in the trial court. I would like to return to the issue of whether the text answers the question as to whether the ADA preempts an air carrier's claims. And the answer to that question, I think you find in the Supreme Court's decision in Travelers. Travelers of course interpreted the identical phrase, relates to, in the ERISA statute. But the significance of that is the interpretation or definition of relates to used in connection with ADA claims in Morales, Wolins, Ginsberg, is the same definition of the terms relates to in the ERISA statute. In Travelers, the Supreme Court made clear that courts were not to engage in what it called uncritical literalism and that the broad sweeping definition of relates to adopted in both Shaw and by the Supreme Court in Morales was unhelpful and if carried to its full indeterminacy would swallow preemption and render Congress's statutes a mere sham. I believe, and in contrast, the Supreme Court in Travelers said the lower court's duty was to examine Congress's intent as to whether it was, whether the particular issue in the case was something Congress intended to preempt. And I think in this case, that is the penultimate issue, is whether the general language of relates to, as limited by the Supreme Court in Travelers, whether that general language can in effect swallow the Supreme Court's decision to issue the air carrier, the air ambulance, appellant, JEDICU's state law claim in this case. I would suggest that the on-point case on this topic specifically, whether the general language of relates to can swallow the specific claims at issue in this case, this case is more like the Supreme Court's decision in Medtronic. In Travelers, in which the Supreme Court looked at a number of factors in determining whether a state law claim against a medical device manufacturer, in that case, was preempted. And several things of note in the Medtronic analysis by the Supreme Court that I think are applicable here, the Supreme Court's decision for Congress to not simply preempt state law remedies and to instead mean remedy when it didn't say remedy. Also more telling in Medtronic, the Supreme Court noted that preemption of a state law claim would be at the outer bounds where the federal statute that purportedly preempted the state law claim did not itself provide a federal remedy. All right. Thank you very much, Mr. McClelland. I think we have your argument. And we will take that matter under consideration. The next case on our agenda...